Hillsborough,
No. 5492.

THEODORE WALKER & a.

*v.*

MANCHESTER & a.

Argued June 7, 1966.
Decided September 30, 1966.

*Eaton, Eaton, Ross & Moody* ( *Mr. Clifford J. Moody* orally ), for the plaintiffs.

*J. Francis Roche*, city solicitor ( by brief and orally ), for defendant city of Manchester.

*Elmer T. Bourque* ( orally ), for defendants Thomas R. and Carol C. Gross.

WHEELER, J. This case is a petition to appeal the decision of the Manchester zoning board of adjustment granting to defendants, Thomas R. and Carol C. Gross, a permit to convert the use of premises at 754 Chestnut Street, to a dwelling and funeral home.

The Court after trial with a view dismissed the appeal. The plaintiffs' exceptions to the denial of this motion to set aside the decree were reserved and transferred by *Keller*, J.

The only issue presented here is whether the decision of the Manchester zoning board of adjustment was erroneous or unjust, or unreasonable. Appeals from a decision of a zoning board of adjustment are governed by the provisions of RSA 31:78 which provides: " Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the board of adjustment or legislative body to show that the same is unreasonable or unlawful, and all findings of the board of adjustment or legislative body of such municipality upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unjust or unreasonable. " See *Vlahos Realty Co.* v. *Little Boar's Head District*, 101 N. H. 460; *Griauzde* v. *Nashua*, 103 N. H. 468.

The Court made the following findings and rulings: " The Manchester Zoning Ordinance, that is, the one applicable to this case, provides for the following districts, which are set forth in the order of their restrictiveness: Single residence, general residence, apartment, local business, limited business, commercial, and unrestricted. A funeral home is not permitted in any one of the first three named districts, but is in the others.

" The property in question is situated at the corner of Chestnut Street, a busy through street, which runs north and south, and North Street, which runs east and west. Chestnut Street runs parallel to and about 600' easterly from Elm Street, and North Street runs parallel to and about 600' southerly from Webster Street. Elm Street is one of the principal streets in the City; it goes through a large business district, south of the location in question, and is one of the busiest streets in the City. Webster Street, which is also very busy, is part of U. S. Route 3, leading from Manchester to Concord. In between Chestnut and Elm Streets is Bay Street, also running north and south.

" The property in question consists of a lot 115' x 115', on which there is a large old dwelling, and a separate large building referred to as a garage.

" One issue is whether or not the denial of a variance would con stitute a hardship. The Grosses had listed the property for sale prior to their application for a variance. It is findable, that is, reasonable men could find, that, in view of the size and age of the dwelling and garage, it would have constituted a hardship to them to sell for a permitted use.

" On the issues of whether the variance is contrary to the public interest or the spirit of the ordinance, one factor to consider is the nature of the properties in the neighborhood.

" The single residence district in question extends westerly to an apartment house district, which is about 100' in width, along the easterly side of Elm Street; it extends northerly to a local business district, about 100' wide, on the southerly side of Webster Street; it extends easterly and southerly to a general residence district.

" The buildings in the neighborhood, within the single residence district, are mostly large houses, and most of these are used for single family residence. However, there are a number of uses for which it was necessary to procure variances. At the northeast corner of North and Bay Streets, abutting the Gross property, is a large single family dwelling, which has been converted into a four family dwelling, by virtue of a variance, and which is owned by the plaintiffs, the Walkers. About 300' north of the Walker house is a large single family dwelling which has been converted into a home for aged people by virtue of a variance. Across North Street from the Walker house is a large single dwelling which has been converted into a three family dwelling by virtue of a variance, and across Bay Street from this property is a single family dwelling which has been converted into a four family dwelling by virtue of a variance. On the northeasterly corner of North and Chestnut Streets, across from the Gross property, is a single family dwelling, which has been converted into a single family dwelling and doctor's office by virtue of a variance; this property is now for sale due to the recent death of the doctor. About 200' north of this property, on the easterly side of Chestnut Street, is a single family dwelling which has been converted into a dwelling and a small hairdressing parlor by virtue of a variance. On the southerly side of North Street, opposite the doctor's place is a large dwelling converted from a

three family house to a five family house by virtue of a variance.

"About 200' south of the property in question, on the westerly side of Chestnut Street, is a doctor's office, for which a variance was granted, and further south is a nonconforming apartment, to the west of which is a non-conforming doctor's office.

"At the southwesterly corner of Bay and Webster Streets there is a market; at the southwesterly corner of Chestnut and Webster Streets there is a filling station; and on the southeasterly corner of Chestnut and Webster Streets there is a large trade school. On the easterly side of Elm Street, within about 1200' southerly of Webster Street, there are office buildings, apartment houses, and a doctor's office.

"Some seven variances have been granted to allow funeral homes in an apartment district just south of the single residence district in question, and some three variances have been granted in general residence districts for funeral homes.

"Mr. Durning intends to improve the condition and appearance of the property when, and if, he occupies it as a residence and funeral home.

"It is findable, on all the evidence, that the variance would not be contrary to the public interest or the spirit of the ordinance.

"It is also findable, on all the evidence, that the variance would not cause any diminution in values of surrounding properties.

"Consequently, since it is findable that no public or private rights would be injuriously affected by the proposed use, it is also findable that the hardship which would result by being limited to a sale for a permitted use, is an unnecessary hardship."

Although the general character of the neighborhood is generally residential, the Trial Court properly found that numerous variances have been granted to permit the conversion of many of its large residences into multiple apartments and for some business uses. There was also testimony by the city planner that the planning board staff is required to make recommendations every month to the zoning board of adjustment on the suitability of accepting or denying petitions for variances. It is their usual procedure to recommend that the adjustment board grant or deny a variance applied for. The planner testified that "in reviewing the particular month's series of recommendations" the present was the only case where no such specific recommendation was made. Its only recommendation was that "if

application is approved parking should be screened from neighboring properties and no electrified signs should be permitted." It is agreed that these recommended conditions were incorporated in the variance granted by the zoning board in this case.

There was also evidence that three funeral homes in Manchester are located in general residence districts and eight funeral homes are located in. apartment house districts. It was also testified, .although there was contrary evidence, that the use of these premises for a funeral home would have no adverse effect on the neighborhood.

It was testified that there is a very limited demand for use as a single residence of a house such as this one containing thirteen rooms, eight of which are bedrooms. There was further testimony that it is not economically feasible to make this house in its present condition suitable as a single family dwelling and "it has to be converted to one thing or another."

On the evidence it could be found that literal enforcement of the ordinance would result in unnecessary hardship and that granting of the variance would result in substantial justice and would not be contrary to the spirit of the ordinance. *Bouley* v. *Nashua*, 106 N. H. 79; *Levesque* v. *Hudson*, 106 N. H. 470; RSA 31:72 III. Considering the record as a whole, neither the board nor the Court can be held as a matter of law to have erred or to have acted unreasonably in so deciding. RSA 31:78.

*Exceptions overruled.*

DUNCAN, J., dissented; the others concurred.

DUNCAN, J., *dissenting*: The record in this case contains no finding, and in my opinion would support no finding, of the existence of any "special conditions" ( RSA .31:72 III ) with respect to the residential premises in question which would justify the granting of a variance for the proposed business use, in a residential zone, where residential uses prevail, at least in the immediate neighborhood. *Cf. Bouley* v. *Nashua*, 106 N. H. 79, 84. See *St. Onge* v. *Concord*, 95 N. H. 306, 310 ( dissenting opinion ); RSA 31:60-62.